**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DELORES A. ALLEN,
                                        Plaintiff,

        v.                                                      No. 03-CV-24
                                                                     (FJS/DRH)
JO ANNE B. BARNHART, Commissioner of
Social Security Administration,
                                        Defendant.

_____

**APPEARANCES:**                         **OF COUNSEL:**

JONATHAN P. FOSTER, ESQ.
Attorney for Plaintiff
407 South Main Street
Athens, Pennsylvania 18810

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Post Office Box 7198
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff Delores A. Allen ("Allen") brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for benefits under the Social Security Act.  Allen moves for a finding

of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket

Nos. 11, 13. For the reasons which follow, it is recommended that the Commissioner's

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

decision be remanded for further proceedings.

## I. Procedural History

On January 9, 2001, Allen filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 68-70.[2] That application was denied after the initial determination and following reconsideration. T. 57-61. Allen requested a hearing before an administrative law judge (ALJ), T. 62-63, which was held before ALJ Franklin Russell on December 11, 2001. T. 32-56. Allen was represented by counsel. T. 30-31. In a decision dated July 17, 2002, the ALJ denied Allen's claims. T. 9-18. The Appeals Council denied Allen's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 4-5. This action followed.

## II. Contentions

Allen contends that the ALJ erred when he failed to accord the proper weight to her treating physician, found that she retained the Residual Functional Capacity (RFC) to perform her past work, and failed properly to address her testimony and work history. The Commissioner contends that there was substantial evidence to support the determination that Allen was not disabled.

## III. Facts

Allen is currently sixty-one years old, previously worked as a cook and housekeeper,

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 9.

2

and has a high school diploma. T. 35-41, 57, 102, 120. Allen alleges that she became

disabled on May 1, 2000 due to degenerative joint disease in the right knee. T. 85.

## IV.  Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to

engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that

he or she is not able to do previous work or any other substantial gainful work considering

the claimant's  age, education, and work experience, regardless of whether such work

exists in the immediate area, whether a specific job vacancy exists, or whether the claimant

would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged
> in substantial gainful activity.  If he [or she] is not, the [Commissioner] next
> considers whether the claimant has a 'severe impairment' which significantly
> limits his [or her] physical or mental ability to do basic work activities.  If the
> claimant suffers such an impairment, the third inquiry is whether, based solely
> on medical evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him [or her] disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a 'listed'
> impairment is unable to perform substantial gainful activity.  Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,

despite the claimant's severe impairment, he [or she] has the residual
functional capacity to perform his [or her] past work.  Finally, if the claimant is
unable to perform his [or her] past work, the [Commissioner] then determines
whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2004).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v.
Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an
impairment prevents him or her from performing past work, the burden then shifts to the
Commissioner to determine if there is other work which the claimant could perform. Id.


### B. Scope of Review

The reviewing court must determine if the Commissioner has applied the proper legal
standards and if the decision is supported by substantial evidence. Machadio v. Apfel, 276
F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at
131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered
throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209
F.3d 117, 122 (2d Cir. 2000). The ALJ must elaborate specific factors to allow the reviewing
court to determine whether substantial evidence supports the decision. Ferraris v. Heckler,
728 F.2d 582, 587 (2d Cir. 1984).  If the Commissioner's finding is supported by substantial
evidence, it is conclusive and on review, the court cannot substitute its interpretation of the
administrative record for that of the Commissioner.  Yancey v. Apfel, 145 F.3d 106, 111 (2d
Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

4

## V.  Discussion

### A. Medical Evidence

Allen was treated by Kim Trahan, a physician's assistant, from May 26, 2000 to December 3, 2001. T. 122-32, 147-61. On May 26, 2000, Allen presented with right knee pain and swelling with no inciting factors such as a change in activity and no prior history of any knee problems. T. 122. Allen was not in acute distress, ambulated with a normal gait, was tender over the posterior medial right joint line, and was essentially stable to stress. T. 122. Slight effusion was noted, there was no Baker's cyst,[3] range of motion was limited slightly, there was a positive McMurray's sign,[4] and there was no catching. T. 122. The assessment was probable degenerative joint disease medial compartment of the right knee. T. 122. Trahan prescribed Celebrex, 200 mg. and instructed Allen to apply ice and to avoid squatting, kneeling, and climbing. T. 122-23. Trahan excused Allen from work from May 26 to 28, 2000. T. 125. An X-ray taken on May 27, 2000 was unremarkable with no evidence of fracture or degenerative changes. T. 132.

On June 12, 2000, Allen complained that she continued to have right knee pain and swelling. T. 126. Allen had a slightly antalgic gait on the right, mild effusion and significant medial joint line tenderness, positive bounce home sign, limited flexion, was stable to all stress, and had a positive McMurray's sign. T. 126. The assessment was a probable right

---

[3] "[A] swelling behind the knee, caused by the escape of synovial fluid which has become enclosed in a sac of the membrane." DORLAND'S ILLUSTRATED MED. DICTIONARY 417 (28th ed. 1994).

[4] "The occurrence of a clicking sound during the manipulation of the knee, which is indicative of an injury of a meniscus of the knee joint." 4-M SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE 1593 (2004).

5

degenerative meniscal tear. T. 126. Allen refused a recommended injection, began treatment with an anti-inflammatory, Mobic, 7.5 mg., and was given exercises to reinforce movement. T. 126.

On July 8, 2000, Allen's knee pain had improved, the swelling had reduced, she was doing all regular activities, and there was no catching, locking, or giving way. T. 129. There was mild tenderness along the anterior medial right joint line, Allen was in no acute distress, and had a normal gait. T. 129. There was no erythema, effusion, edema, ecchymosis, or atrophy, range of motion was normal, Allen was stable to all stress, and McMurray's sign was negative. T. 129.

On March 3, 2001, Allen presented with recurring knee pain. T. 152. There was mild effusion in the medial joint line of the right knee, no erythema, and an active range of motion of the right knee with slightly limited extension secondary to pain and swelling. T. 152. There was a normal range of motion, there was no catching or locking, the knee was stable to all stress, and McMurray's sign was positive. T. 152. The assessment was right knee pain with probable patellofemoral pain syndrome and degenerative changes. T. 152. Allen refused the recommended treatment of injections and stated that the recommended physical therapy would be too expensive. T. 152.

On March 23, 2001, Allen was referred to  Dr. James Tacci for an orthopedic examination. T. 136-39. Allen's gait was normal, her spine, upper extremities, and fine motor activity were normal, her right knee flexion-extension was limited to 110°, and her right hip forward flexion was limited to 60° secondary to right knee pain. T. 138. There was chronic inflammation and mild effusion of the right knee joint and no instability of the knees or ankles bilaterally. T. 138. The impression was right knee pain consistent with arthritis. T.

6

139. The prognosis was stable as the knee symptoms were not likely to change significantly over the next one-to-two years. T. 139.

### B. Treating Physician's Rule

Allen contends that the ALJ failed to give the proper weight to the opinion of her treating source. The Commissioner contends that the ALJ properly considered the opinion of Allen's treating source, a physician's assistant.

When evaluating an application seeking disability benefits, "the hearing officer must look at the (1) objective medical facts and clinical findings, (2) the treating physician's diagnoses and other medical opinions based on the medical facts, (3) subjective evidence of disability and pain related by claimant, and . . . evidence of these conditions, if any, and (4) the claimant's educational bgackground, age, and work record." Harris v. Railroad Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991) (citing Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)). Under the regulations, a treating source's opinion is entitled to "controlling weight" if the Commissioner "find[s] that [it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); Shaw, 221 F.3d at 134 (citing Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999)).  Before discounting the opinion of a treating source, however, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to afford that opinion: (1) the frequency of examination and the length, nature, and extent of

the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors.  Alder v. Apfel, No. 99-CV-136, 1999 WL 1458368, at *4 n.3 (N.D.N.Y. Aug. 13, 1999) (Mordue, J.) (citing Schaal, 134 F.3d at 504).

Allen was treated for knee pain five times by Kim Trahan, a physician's assistant, from May 26, 2000 to December 3, 2001.  T. 122-32, 152-54. On December 3, 2001, Trahan found that Allen could occasionally lift twenty to fifty pounds, frequently lift eleven to twenty pounds, and continuously lift up to ten pounds; that she could frequently carry up to ten pounds and occasionally lift eleven to twenty pounds; could sit for eight hours but needed breaks every two hours; could stand for four hours but only two hours without interruption;, and could walk for two hours but only one hour without interruption. T. 147-49, 161. Trahan found that Allen could never crouch, kneel, or crawl but could occasionally climb, balance, and stoop. T. 149-51.

An opinion from a treating physician that is well-supported by medical evidence may be entitled to controlling weight. See 20 C.F.R. § 416.927(d)(2). However, a physician's assistant is not an acceptable medical source and such opinion is not necessarily entitled to such weight. See 20 C.F.R. § 416.913 (d)(1); Colondres v. Barnhart, No. 04-CIV-1841 (SAS), 2005 WL 106893, at *6 n. 97 (S.D.N.Y.  Jan. 18, 2005). The ALJ found that while Trahan's opinion was not entitled to controlling weight, it was given significant weight because Trahan had evaluated Allen on several occasions. T. 16.

The ALJ found that Allen retained the RFC to perform the exertional demands of her past work requiring maximum lifting of twenty pounds and frequent lifting of ten pounds which might require standing or sitting. T. 16. Dr. Tacci found that Allen had a mild limitation

8

with respect to heavy or frequent bending or lifting with her legs and had no restrictions with respect to sitting and light levels of walking, standing, lifting, carrying, and bending. T. 139. A non-treating agency physician found that Allen could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and could stand, walk, and sit about six hours in an eight hour work day. T. 140-45.

An x-ray taken on May 27, 2000 was essentially normal with no evidence of fracture or degenerative changes. T. 132. On July 8, 2000, Allen reported improvement in her knee pain and swelling and that she was doing regular activities. T. 129. The opinion of the other physicians, the objective findings, the fact that Allen's knee pain improved with medication, and Allen's reports of her daily activities support the non-controlling weight that the ALJ accorded Trahan's opinion as to Allen's limitations.

Therefore, the Commissioner's finding on this ground should be affirmed.

## C. RFC

Allen contends that the ALJ erred when he found that she retained the RFC to return to her past relevant work as a cook. The Commissioner contends that there is substantial evidence in the record to support the ALJ's finding that Allen could return to her past relevant work as a cook.

RFC describes what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a) (2004). "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms." Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)). "RFC can only

9

be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding the claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work or other work in the national economy. State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520, 416.960 (2004).

Once the ALJ makes a determination as to the claimant's RFC, the ALJ must then determine whether this RFC will permit the claimant to meet the actual physical and mental demands of the claimant's past relevant work. Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999); Lunan v. Apel, No. 98-CV-1942, 2000 WL 297988, at * 7 (N.D.N.Y. Mar. 10, 2000) (Smith, M.J.). The ALJ must make an "explicit finding regarding the actual physical and mental demands of the claimant's past work." 20 C.F.R. § 404.1520(f); Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991). The ALJ may refer to the Dictionary of Occupational Titles for a claimant's past work as support for his or her findings. Clark v. Barnhart, No. 02-CV-4626 (FB), 2003 WL 22139777, at *7-8 (E. D.N.Y. Sept. 16, 2003), Lunan, 2000 WL 297988, at * 7. A finding that a claimant can return to past work must be based on more than conclusory statements. The ALJ must specifically and fully explain the claimant's limitations, and how those limitations affect the claimant's residual functional capacity. Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003); Pfitzner, 169 F.3d at 568.

The ALJ found that in her former job as a cook, Allen stood and walked most of her

10

four to five hour workday with occasional bending and lifting up to twenty pounds. T. 16. The ALJ concluded that because Allen's past work did not require the performance of work activities precluded by her medically determinable impairments, she was able to return to her past work. T. 16. Allen testified that in her past work as a cook she was on her feet the majority of her four to five hour shifts. T. 39-42, 120.

A non-treating agency physician found that Allen could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and could stand, walk, and sit up to six hours in an eight hour work day. T. 140-45. Trahan found that Allen could occasionally lift twenty to fifty pounds, frequently lift eleven to twenty pounds, and continuously lift up to ten pounds; that she could frequently carry up to ten pounds and occasionally lift up to twenty pounds; could stand four hours but only stand two hours without interruption; and could walk two hours but only one hour without interruption. T. 147-49, 161. Dr. Tacci found that Allen had a mild limitation with respect to heavy or frequent bending or lifting with her legs and had no restrictions with respect to sitting and light levels of walking, standing, lifting, carrying, and bending. T. 139. Tacci did not specify what a "mild limitation" or "light levels" represent in terms of the number of hours Allen could stand, walk, and sit or the amount of weight she could lift and carry.

Thus, it appears that the only medical opinion as to Allen's RFC that the ALJ relied on was that of the non-treating physician. The ALJ did not inquire if Allen's past work allowed Allen to stand two hours without interruption and walk one hour without interruption. In addition, the Dictionary of Occupational Titles contains several job titles that relate to

11

cooks and each identify different job requirements with light to medium levels of exertion.[5] The ALJ's decision does not specify which one of these job descriptions reflects Allen's past relevant work. The ALJ 's concluded that Allen's past work did not require the performance of work activities precluded by her medically determinable impairments but failed to provide details as to what limitations were included here.

Therefore, it is recommended that this case be remanded for further evaluation by the ALJ as to the specific nature of Allen's past relevant work.

### D. Credibility

Allen contends that the ALJ erred when he found her statements not credible. Specifically, Allen contends that the ALJ erred in rejecting her credibility based on Allen's description of non-work daily activities. The Commissioner contends that the ALJ properly addressed Allen's credibility.

The ALJ may evaluate many factors in determining if a claimant is disabled, including medical evidence, statements made about the claimant's impairments, restrictions, daily activities, efforts to work, and any other relevant statements.  20 C.F.R. § 404.1512. Here, the statements made by Allen during the hearing were indeed relevant to a finding of disability and the ALJ properly considered these statements in making a credibility finding.

As long as the ALJ makes specific findings that are supported by the record, the ALJ may discredit a claimant's allegations based on inconsistencies in the testimony or on

---

[5] Dictionary of Occupational Titles § 313.131-026 (sous chef); § 313.361-014 (cook); § 313.374-010 (fast food cook); § 313.381-030 (school cafeteria cook); § 315.361-010 (mess cook); §  313.687-010 (cook helper) (1991).

relevant character evidence. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). It is specifically the province of the ALJ "to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions" and to assess the credibility of witnesses. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

At the hearing, Allen testified that she had steady pain in her right knee which had increased, that she took Mobic once daily and that physical therapy was too expensive. T. 43-45, 52. Allen testified that she did dishes, laundry, housework, cooked lunch and dinner, watched television, drove, went shopping, and that her daughter helped with the housework. T. 46-47, 50.  However, Allen also testified that she did not drive far, did not eat out,  go to church or the movies, and that her social life was limited. T. 52-53. Allen testified that she could only walk or stand  five to ten minutes before feeling pain in her knee, that she could lift about ten pounds, could not squat, could not stand for more than ten minutes, and if she walked, her knee gave out. T.  17, 48-49, 52-53.

On July 8, 2000, Allen reported that her knee was much better, that the knee swelling had gone down, that she was doing all regular activities, and that there was no catching, locking, or giving way. T. 129. Allen did not use any assistive device, had difficulty walking long distances, climbing stairs, and standing for prolonged periods of time, but she could cook, clean, socialize with friends, shower, bathe, and dress herself. T. 137. Allen made no mention, nor is there any indication in the record, that she was able to do these activities on a sporadic or transitory basis or that they took longer due to her knee pain. There is substantial evidence in the record to support the ALJ's rejection of Allen's credibility regarding her symptoms.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.


### E. Work History

Allen contends that the ALJ failed properly to address her work history. The Commissioner contends that the ALJ correctly evaluated Allen's work history.

"The Second Circuit has established that a claimant with a good work record is entitled to substantial credibility when claiming inability to work because of a disability." Rivera, 717 F.2d at 725 (2d Cir. 1983); Dombrowski v. Chater, 960 F. Supp. 558, 565 (N.D.N.Y. 1997) (Scullin, J.); see also Singletary v. Secretary of HEW, 623 F.2d 217, 219 (2d Cir. 1980) (holding that good work history justifies the inference that when claimant stopped working, he did so for the reasons stated). However, work history is one among many factors that the ALJ considers in weighing the credibility of claimant testimony. Schaal, 134 F.3d at 502.  Other factors include daily activities, subjective symptoms, precipitating and aggravating factors, medication taken to relieve symptoms, and measures taken to relieve symptoms. 20 C.F.R. § 404.1529(c)(3) (2004).

At the hearing, the ALJ attempted to determine Allen's work history, including why she left jobs and how long she was employed there. The ALJ found that Allen worked thirty hours per week as a cook for six months in 1999, worked as a part-time housekeeper for sixty-four hours a month for six months, and that Allen worked as a cook from 1980 through 1999. T. 13. Allen no longer held her job as a cook at her last place of employment because it went out of business.  The record of earnings showed no earnings in 1980-83 and 1985-89, and her earnings varied from $ 1,099 in 1990 to $ 4,187 in 2000. T. 74-76.

14

Although Allen had a long work history, she worked at several different jobs during this period, and the hours worked varied with each job. T. 72-83. The ALJ evaluated other factors in assessing Allen's credibility, including work performed after her disability onset date, her daily activities, an unremarkable x-ray, improvement in symptoms with medication, no assistive device, that her condition could be regulated by treatment or medication, and that Allen failed to provide a reasonable explanation for refusing a recommended injection.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

### F. Remand or Reversal

A reviewing court has the authority to reverse with or without remand.  42 U.S.C. §§ 405(g), 1383(c)(3) (1999).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).  Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Here, there are gaps in the record as to whether Allen could perform her past relevant work.  Accordingly, it is recommended that the decision of the Commissioner be remanded for further proceedings.

### VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for

further proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATE: March 23, 2005
      Albany, New York

United States Magistrate Judge